IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| CSC SUGAR LLC, | * | |
| Plaintiff, | * | Civil Action No. |
| v. | * | |
| M/V ST. PAUL, IMO: 9623051, its engines, tackle and apparel | * | |
| | * | |
| Defendant *in rem*, | * | |
| and | * | |
| ASTEROPE SHIPPING CO. LTD., | * | |
| Defendant *quasi in rem*, | * | |
| and | * | |
| The Master of the M/V ST. PAUL, | * | |
| Garnishee. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

**VERIFIED COMPLAINT *IN PERSONAM* AND FOR ARREST AND ATTACHMENT OF VESSEL *IN REM* AND *QUASI IN REM***

CSC Sugar LLC ("CSC") sues the M/V ST. PAUL, IMO: 9623051 (the "Vessel") *in rem*, pursuant to Supplemental Admiralty and Maritime Rule C, on CSC's maritime tort lien against the Vessel, and sues Asterope Shipping Co., Ltd. ("Asterope") *quasi in rem*, as owner of the Vessel, pursuant to Supplemental Admiralty and Maritime Rule B, requesting the issue of a writ of maritime attachment to the Master of the Vessel as Garnishee, and states further as follows.

**Jurisdiction and Venue**

1.      This is an admiralty and maritime action pursuant to 28 U.S.C. § 1333 within the meaning of Fed. R. Civ. P. 9(h) for recovery for maritime tort and alternatively breach of maritime contract for damage to a large cargo of sugar because of the faults of the Vessel and Asterope as its Owner, as detailed herein, in maritime tort pursuant to Counts I, III and V hereon.

2.      Further, this is an action pursuant to the Federal Arbitration Act, 9 U.S.C. § 8 in that there is a pending New York maritime arbitration action which CSC initiated pursuant to the bill of lading issued under authority of the Master of the Vessel, and is in the alternative as set out in Counts II, IV and V herein brought for security for award including for damages, attorneys', paralegals', arbitrators', and other fees and costs that may be entered by the arbitral panel in favor of CSC in that arbitration.

3.      Venue is proper in this Court because the Vessel has arrived or shortly is to arrive for a call at the Port of Baltimore, in this District.

4.      Asterope is not found in this District for the purposes of Supplemental Admiralty and Maritime Rule B.

**The Parties**

5.      CSC is a Connecticut limited liability company with its principal offices at 33 Riverside Ave., Westport, CT, 06840. CSC imports sugar into the United States, including through the chartering of ocean vessels such as the M/V ST. PAUL and the purchase of the bill of lading covering the cargo.

6.      Asterope, a Marshall Islands company, is the registered owner of the Vessel and further the owner of the Vessel under general United States maritime law, including the Maritime Transportation Security Act of 2002, 33 U.S.C. § 2701(26)(A)(i) ("Owner").

7. The Vessel, M/V ST. PAUL, is a General Cargo ship with an overall length of 177.8 meters and width 28.6 meters, sailing under the flag of the Bahamas.

## Facts

8. On or about February 1, 2023, CSC entered into a vessel charter agreement (the "Charter Party") for the Vessel with sub-charterer of the Vessel, non-party Norvic Shipping International Ltd., for the voyage charter and transport aboard the Vessel of 18,000 metric tons of bagged sugar ("Cargo") from Brazil to Brownsville, Texas.

9. A bill of lading, no. NVIHISTP202301001, was issued by the Master of the Vessel on June 22, 2023 in Sao Sebastiao, Brazil, evidencing a Cargo of 15,000 bags of sugar with a total net weight of 18,000 metric tons (the "Bill of Lading") to be transported aboard the Vessel from Sao Sebastiao to Brownsville. The Bill of Lading was endorsed to CSC and incorporates the Charter Party.

10. Asterope, as registered owner of the Vessel and as owner of the Vessel within the meaning of general United States maritime law, is bound by the terms of the Charter Party, including an arbitration clause, as incorporated into the Bill of Lading. As set out herein, however, Asterope has denied that it is in contractual privity with CSC or bound by the Bill of Lading and so alternatively, Asterope as Owner further owes CSC as owner of the Cargo a duty of care to keep the Vessel in good order and condition and to carry and deliver the Cargo free of damage and adulteration. CSC holds a maritime tort lien *in rem* against the Vessel because of the Vessel's (and its crane's) defects and failure to deliver the Cargo in good order and condition.

11. The Bill of Lading, including incorporated terms of the Charter Party, provides for maritime arbitration in New York subject to general U.S. maritime law and further for the following:

> 13. Failure to Observe Requirements
>
> If Owner fails to meet the requirements of this Part II, Owner shall (1) indemnify and hold Charterer . . . harmless against any loss or damage and shall reimburse them for extra costs resulting from such failure. . .. Charterer shall furnish timely notice to Owner of any claims arising under this paragraph.
>
> \* \* \*
>
> (Charter Party Part II)
>
> 12.     Vessel's Gear:
>
> (a)     Vessel shall supply at all times at both loading and discharge port, free of charge to Charterer, winches, power and gear in good working order, including ropes and slings on board.

Charter Party Rider Clause 33 further requires that the Vessel equipment be in efficient state and good working condition at all times, and that all cranes shall be able to be used simultaneously at all times.

12. Pursuant to the Charter Party and Bill of Lading, the Vessel was to transport a sugar cargo from Brazil to Brownsville, Texas, which Cargo was to be loaded and discharged via the Vessel's cranes.

13. At least one of the cranes (No. 2), however, was not in good working order. On July 18, 2023, after Cargo of 19.2 metric tons of sugar (16 totes each weighing 1.2 mt each) crossed the vessel's rails at Brownsville and while descending onto a flatbed, the crane's hoisting wire parted and snapped resulting in the spreader bar of totes being dropped from approximately 4 (four) feet onto a designated flatbed. The snapping resulted in metal wires projecting across cargo in Vessel Hold 3 and the Cargo on the pier, causing a total loss of 19.2 metric tons and contaminating CSC's sugar Cargo showering metal shards on an additional 2,395.2 metric tons of sugar (1,996 totes), thereby contaminating the Cargo with metal shards:



Crane 2 – compromised main cable (top left), Close-up of point of failure (top right), Metal shards on top of totes in CH No. 3 (bottom left) and metal shard puncturing tote in CH No. 3 (bottom right).

14. As such, Asterope as Owner and the Vessel have failed to meet its requirements to CSC as Cargo owner under general United States maritime law and the Bill of Lading, and is liable to CSC for CSC's damages under general United States maritime law and the Bill of Lading.  CSC gave Asterope timely notice of CSC's loss and demanded arbitration appointing its arbitrator, including under the terms of the Charter Party as incorporated into the Bill of Lading.

15. Asterope failed to respond to CSC's arbitration demand and CSC accordingly as provided under the applicable arbitration rules of the Society of Maritime Arbitrators, New York, had an arbitrator appointed for Asterope, who, with the first arbitrator, appointed the third arbitrator.

16. In February 2024, Asterope filed an action in the United States District Court, Southern District of New York (No. 24-cv-962) (the "SDNY Court"), seeking to enjoin the New York maritime arbitration, alleging that it is not a party to and not bound by the Bill of Lading and its incorporated Charter Party arbitration clause. CSC's answer and opposition to that action is not due until late April 2024; CSC denies these allegations; CSC has duly performed its contractual and other obligations.

17. CSC's damages and accordingly maritime lien *in rem* against the Vessel amounts to at least **$650,251.31** detailed as follows:

| | |
|---|---|
| $14,323.20 | The value of the 19.2 metric tons of lost sugar. The surveys conducted by all interested parties, including Asterope's insurer, demonstrated that there were 16 totes on the spreader bar dropped by the Vessel's defective crane. These 16 totes suffered a total loss. CSC's sound value of the refined sugar was USD 746 per mt – **16 totes x 1.2 mt per tote = 19.2 mt x USD 746.00 = USD 14,323.20.** |
| $6,869.18 | $6,869.18 – the Tier 2 tax on the lost 19.2 mt of cargo (US import tax) – Tier 2 tax is a US import tax of $357.77 per mt. CSC Sugar has now paid the invoices for costs incurred.<br><br>**19.2 mt x 357.77 = USD $6,869.18** |
| $47,512.83 | This amount reflects the import tax differential between the refined sugar in the condition it should have been delivered and the 2,394.80 mt of damaged cargo from Vessel Hold No. 3, which had to be downgraded to raw sugar.<br><br>Tier 2 tax on the cargo is the US import tax which CSC paid on the sugar.<br><br>Based on the attached, import tax on refined sugar is .1628 cents / per Lb. / Import tax on raw sugar is .1538 cents per Lb. – difference is .009 cents per lb. (or 90 points). CSC Sugar incurred this differential on the 2,394.80 mt. /////// .009 cents per lb. x 2204.6 lbs. per mt = USD 19.84 pmt //// This information is on the official USDA website for sugar imports.<br><br>**USD 19.84 pmt x 2,394.80 mt = USD 47,512.83**. |
| | |

| | |
|---|---|
| $1,627.20 | The value of the freight for 19.2 metric tons of lost sugar. **USD 84.75 pmt x 19.2 mt = USD 1,627.20** |
| $5,110.80 | The discharging and stand by time (attributable to the crane failure) costs for 19.2 metric tons of lost sugar. |
| $526,808.10 | The difference between sound and damaged value on 2,394.80 mt (sugar downgraded from a refined food-grade product to a raw product) **2,394.80 mt x $219.98 = $526.808.10** |

## COUNT I – MARITIME TORT
## *IN PERSONAM* AGAINST ASTEROPE

18. CSC repeats the foregoing paragraphs.

19. Asterope's, through its ownership, failure to maintain and operation of the Vessel damaged the Cargo, committed a maritime tort for which CSC has a right of action against Asterope in damages.

20. Asterope owed duties to CSC including to have the Vessel deliver the Cargo to CSC in good order and condition. Asterope breached those duties to CSC and therefore owes CSC damages as demanded below.

21. CSC brings this Count in the alternative to Count II, immediately below, in the event that Asterope claims successfully that it is not bound to arbitrate as set out in the Charter Party.

## COUNT II – MARITIME CONTRACT BREACH
## *IN PERSONAM* AGAINST ASTEROPE - ARBITRATION

22. CSC repeats the foregoing paragraphs.

23. Alternatively to Count I, through the Charter Party Asterope owes CSC the duty to keep the Vessel in such operating condition that the Cargo is delivered to CSC in good order and condition.

24. Asterope breached its contractual obligations to CSC and therefore owes CSC damages as demanded below, to be awarded in the New York maritime arbitration.

### COUNT III – MARITIME TORT LIEN *IN REM* AGAINST THE VESSEL

25. CSC repeats the foregoing paragraphs.

26. CSC as the result of the failures set out in Count I, holds a maritime tort lien *in rem* against the Vessel for its damages, the costs of arrest, and interest, as set out below

27. CSC has not been paid or otherwise secured for its maritime lien *in rem* against the Vessel and therefore proceeds to arrest the Vessel to execute on its maritime lien *in rem*, for sale of the Vessel and satisfaction of its maritime lien *in rem* as demanded below.

28. CSC brings this Count in the alternative to Count IV, immediately below, in the event that Asterope claims successfully that it is not bound to arbitrate as set out in the Charter Party.

### COUNT IV – MARITIME CONTRACT LIEN *IN REM* AGAINST THE VESSEL

29. CSC repeats the foregoing paragraphs.

30. Alternatively to Count III, CSC holds a maritime lien *in rem* against the Vessel resulting from breach of the Bill of Lading issued by or on behalf of its Master.

31. CSC has not been paid or otherwise secured for its maritime lien *in rem* against the Vessel and therefore proceeds to arrest the Vessel to execute on its maritime lien *in rem*, for sale of the Vessel and in security for its claims in the New York maritime arbitration as demanded below.

### COUNT V MARITIME ATTACHMENT AND GARNISHMENT (RULE B)

32. CSC repeats the foregoing paragraphs.

33. CSC has *prima facie* valid admiralty claims.

34. Defendant Asterope cannot be located within the District within the meaning of Supplemental Rule B.

35. Defendant Asterope owns property located or soon to be located within this District, namely, the Vessel, which Garnishee Master of the Vessel holds and/or controls.

36. CSC seeks issue of process of maritime attachment and garnishment so that it may obtain security for its claims as set out in Counts I or II herein, against Asterope and, ultimately, payment of those claims from such security.

37. No security for CSC's claims has been posted by Asterope or anyone acting on its behalf.

## **PRAYER FOR RELIEF**

WHEREFORE, CSC demands judgment as follows:

A. That, in response to **Count I** (maritime tort *in personam* against Asterope), this Court award CSC damages in at least the amount of **$650,251.31** as detailed above, plus costs and expenses of this action including arrest and maritime prejudgment interest;

B. That, in response to Count II (maritime contract breach in personam against Asterope),

1. This Court (a) after CSC obtains security in at least the amount of **$1,050,251.31** ($650,251.31 as detailed above, plus costs and expenses of this action including arrest and maritime prejudgment interest, the costs of arbitration, including arbitrators' and attorneys' fees) and (b) if and when CSC's claim is ordered by the SDNY Court to arbitration in New York, stay this action pending the results of the arbitration and then recognize the arbitral award or any judgement thereon, directing that whichever applicable be satisfied to the amount of the award or judgement with any unsatisfied amounts being subject to the further unsatisfied amount of this Court's judgment recognizing the arbitral award or judgement to the full amount of the award and/or any related judgement; or, in the alternative

2. That if, for any reason (including without limit if CSC waives its right to arbitration, in the interest of saving the costs of the SDNY action), the SDNY Court does not order CSC's claim to arbitration in New York, this Court award CSC its

contract damages in at least the amount of $650,251.31, as detailed above, plus the costs and expenses of this action, including arrest and maritime prejudgment interest

C. That, in response to **<u>Count III</u>** (maritime tort *in rem,* maritime lien against the Vessel):

    1. That the Clerk of this Court issue a warrant for arrest of the Vessel, commanding the United States Marshal for this District, or pursuant to alternative service of the warrant as ordered by this Court, to arrest and take into custody the Defendant Vessel and detain the same in the custody of the substitute custodian until further order of this Court;

    2. That this Court find that Plaintiff holds valid maritime liens *in rem* against the Vessel and its engines, appurtenances, furnishings, machinery, and equipment;

    3. That this Court enter judgment *in rem* against the Vessel, including without limitations all of its engines, machinery, tools, boats, anchors, chains, tackle, fittings, navigation equipment, and all other equipment and appurtenances appertaining or belonging to the Vessel, whether on board or not, and order that Plaintiff's claims of at least **$850,251.31** ($650,251.31 as detailed above, plus costs and expenses of this action including arrest and maritime prejudgment interest of at least $200,000) be asserted and executed against the Vessel for Plaintiff's maritime liens, *in rem*, and that the Vessel be sold to satisfy Plaintiff's maritime liens *in rem*;

    4. That all persons claiming any interest in the Vessel be cited to appear and answer the matters alleged in this Verified Complaint; and that this Court award Plaintiff its costs and other expenses incurred in connection with this proceeding, including without limitations, all costs incurred in *custodia legis*; and

D. That, in response to **<u>Count IV</u>** (maritime contract breach *in rem,* maritime lien against the Vessel), this Court alternatively order arrest of the Vessel as set out immediately above and order that Plaintiff's claims of at least **$1,050,251.31** ($650,251.31 as detailed above, plus costs and expenses of this action including arrest and maritime prejudgment interest, the costs of arbitration, including arbitrators' and attorneys' fees; and maritime prejudgment interest of at least $400,000) be asserted and executed against the Vessel for Plaintiff's maritime liens, *in rem*, and that this Court after CSC obtains in at least the amount demanded whether through sale of the Vessel, *in rem* or security provided stay this action pending the results of the New York maritime arbitration and then recognize the arbitral award, directing that the award be satisfied to the amount of the award with any unsatisfied amounts being subject to the further unsatisfied amount of this Court's judgment recognizing the arbitral award to the full amount of the award;

  E.  That, in response to **Count V** (maritime garnishment, Supplemental Rule B), because Defendant Asterope cannot be found within this District, pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue a Process of Maritime Attachment and Garnishment attaching all of Asterope's tangible or intangible property or any other funds held by any Garnishee, including the Vessel, up to the amount of at least **$1,050,251.31** as detailed above, to secure Plaintiff's claims, and that pursuant to Count I all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Verified Complaint, or that, alternatively pursuant to Count II this case be stayed as set out in that Count; and

  F.  That this Court grant Plaintiff other just and proper legal and equitable relief.

Dated: April 4, 2024.

            /s/ J. Stephen Simms
            J. Stephen Simms (#4269)
            Catherine M. Benson (#25995)
            Simms Showers LLP
            201 International Circle, Suite 230
            Baltimore, Maryland 21030
            Telephone: 410-783-5795
            Fax: 410-510-1789
            jssimms@simmsshowers.com
            cmbenson@simmsshowers.com

            CSC Sugar LLC Counsel

## **VERIFICATION**

I am a principal of Simms Showers LLP, counsel to Plaintiff CSC. No officer of CSC is present in this District to make this declaration, which CSC has authorized me to make on their behalf based on facts including documents and facts from our investigation and received from Asterope. The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the documents and from our investigation and from the records of CSC.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District and also for any corporate registration of Defendant Asterope in the State of Maryland, or

otherwise of any agent authorized to accept service of process in this District. There is no record of any general or resident agent authorized to accept service of process for Defendant Asterope in this District.

> Pursuant to 28 U.S.C. § 1746(1), I certify under penalty of perjury that the foregoing is true and correct.
>
> Executed April 4, 2024.
>
>  /s/ J. Stephen Simms
> J. Stephen Simms
> Simms Showers LLP
> 201 International Circle
> Baltimore, Maryland 21030
> 443-290-8704; fax 410-510-1789
> jssimms@simmsshowers.com